Good morning, Your Honors. May it please the Court, Dana Duncan on behalf of Angela Lawrence. The issue before this Court, or issues, is rather singular and straightforward. The question, first off, is whether limiting an individual to simple, routine, and repetitive tasks differs from the Court's previous ruling in Thomas v. Berryhill, where they indicated simple, routine instructions. The second issue that has to be addressed is the harmless error section, or whether harmless error would apply in this particular case. I'm going to go a little out of context and address the harmless error issue first. In the unpublished decision in Keller, which had the same issues as Thomas … You chose to do that because you feel there's a good chance there's error? I believe there is error, definitely, Your Honor. In this particular case, in Keller, they indicated that the issue to be addressed is whether or not the individual could actually perform the jobs in question, and without that being resolved, the Court could not find harmless error. In this particular case, we have Ms. Lawrence, and as an academic exercise, when you're dealing with law, you sometimes forget the individual involved. Ms. Lawrence had a car accident in 2012, was diagnosed with a conversion syndrome, where she basically it was a somatoform condition that the more activity, the more things she did, the worse her pain got. At the same time, she described periods of depression, mood swings, feelings of hopelessness, decreased sleep, decreased appetite. She was noted with suicidal thoughts. She was admitted to a mental institution. She was diagnosed with bipolar disorder. She was recorded that she was not sleeping, or was only sleeping for three hours a night. The error that you say is there, what is this error? The error in this particular case is that there's nothing in this record that establishes that she can perform these particular jobs because of the complexity involved. If anything beyond the step one, or excuse me, reasoning level one, which is very simple routine work, there's a high probability that she's going to decompensate in the work environment. So that needed to be addressed, and it wasn't. So the judge particular placed a hypothetical question before that resulted in the vocational expert finding that she could perform jobs that had reasoning level of two, which involves some level of some complexity. After all, Ms. Lawrence was noted as having hallucinations. Where in level two do you see the word complexity? Yeah, just a second here. I have to put my hand on that particular issue. I mean, I can read it to you. It says, apply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. That doesn't suggest to me a significant level of complexity. The concrete variables is the issue. A few concrete variables. Correct. And the question then is, what is a few and whether that's adequately addressed? I mean, are we talking a few could be a whole host or multitude of different definitions as far as what tasks and such are or are not complex? That is really the point of the vocational testimony. And really what we're talking about here is we're not talking about a situation where the judge is in a vacuum here. The vocational expert is there. All of this issue is, is we're asking the ALJ to ask a vocational expert at hearing to discuss what jobs and why they can be performed under this hypothetical question in order to resolve the conflict. Your basic concern with this record is if there's a lack of specificity by the ALJ in reasoning between task and instructions. Correct, Your Honor. Putting it simply, the Commissioner is attempting, and I'll go back to the original point, is trying to limit Thomas by saying it only applied to instructions. Okay? It didn't apply to tasks, which is a issue of semantics. Because in essence, what we have here is if instructions are simple and routine, then the tasks are likely to be simple and routine. And I can just point to the fact that since Thomas, there have been a handful of decisions in the district courts where they have faced the issue of tasks. And the district courts have all ruled that tasks and instructions are identical for the purposes of Thomas and having the cases remanded. Perkins v. Saul was decided at the end of July, unpublished, 2019 WL 3483887. Bailey v. Berryhill, 2019 WL 1134 or 9498. Bellhearts v. Saul was decided also. The first two are North Carolina, Bellhearts v. Saul, also North Carolina. Compton v. Saul, South Carolina. Ferguson, which is a published decision, is out of Virginia. 381 fed sup, third edition, 702. And Michael v. or Michael C. v. Commissioner is out of Maryland. And in that case, the court had to face a hypothetical, which was simple and or limited to simple but no detailed work. So what didn't even address either instructions or tasks. It referred to the generic work. In each of those cases, the court indicated that they could not differentiate between tasks and instructions and that the need to be addressed. Now, I can and I cited this in both the supplemental. And that conflict is between the vocational expert's testimony and the dictionary of reasoning? I'm sorry, Your Honor? The conflict that you speak of between the vocational expert's testimony? Yes. And the dictionary's reasoning? Yes. You have a problem with that? It just has to be addressed. Your Honor, the problem that I have with this and the problem that I have and I've basically made my career out of is that we give deference to the Commissioner to establish how they interpret their policies. Has any other circuit addressed that problem? I'm sorry? Any other circuit looked at that problem, the conflict, the so-called conflict, vocational expert's testimony? Well, there's, in different contexts, yes. How they ruled on that? How they come out? Well, they have different standards, but they interpreted, the Eighth Circuit has ruled similarly to the Fourth Circuit. The Seventh Circuit has a standard where the conflict has to be an apparent conflict. That was the Overman case. I actually argued Overman to the Seventh Circuit. The Commissioner establishes the policy, then they interpret it under this ruling, SSR00-4P, and then just arbitrarily will say that, no, there is no conflict here because we say there's no conflict. So that goes back to my question. It's the lack of specificity. Correct. This whole thing could be... It doesn't mean that you disagree. You just want a little more specific answer. Correct. And this whole thing could be resolved by, instead of using terms that are pointless, which are simple routine, why not just say, assume the individual is limited to reasoning level two jobs? But instead of changing or instructing administrative law judges to change how they handle hypothetical questions, the Commissioner would rather be in court litigating, trying to draw distinctions where there is none should be made. By making a distinction and allowing a separation between instructions and tasks, you're going to create nothing but confusion for district judges trying to implement what is. Even in Thomas, the judge said it was simple routine instructions or, excuse me, simple instructions and then followed by saying routine tasks. You cannot differentiate those. And that's the problem in this case. And as a result of the fact that you cannot differentiate, and considering the fact of all of the claimants, Ms. Lawrence's mental problems, we reach a point where it cannot be found to be harmless because of the fact that we just do not have enough specificity in this record to determine whether or not she could actually perform those jobs. With that in mind, if there are no questions, I'll reserve the remainder for rebuttal. All right. May it please the Court? My name is Christina Cole, and I'm here on behalf of the Commissioner of Social Security. Tell me, what do you view to be the issue in this case? The issue in this case is whether there is a conflict between the DOT, the expressed language of the DOT, and the vocational expert testimony in this case. So is the issue whether he needs to give more specific information on it in order to resolve that conflict? Is that the way we do it? The issue is whether there's a conflict at all. Whether when the ALJ looks at the expressed language of the DOT and compares that to what the VE testified, whether there's something there that would alert that ALJ to the fact that there's a conflict here, there's a mismatch, that there's something they need further explanation for. And here, there simply is not. So you don't need anything more specific if there's not a conflict in the first instance? Correct. Is there other circuits that have looked at this and given some guidance that we probably could think about? There absolutely is, Your Honor, and I was just about to say that, in fact. Several circuit courts across the country have been presented with this same question, whether there's a conflict between a restriction to the simple, routine, repetitive tasks of unskilled work, on the one hand, and reasoning level 2 jobs. And not a single one has found a conflict. And those circuits include the Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits, and we cite all of those cases in our briefing. What about the Seventh Circuit case that you argued? The Seventh Circuit found no conflict. Mr. Duncan said he argued that case. Right. The Seventh Circuit found no conflict between reasoning level 3 jobs and a restriction to simple, routine, repetitive tasks. So they found it at an even higher level of reasoning. I don't believe they've addressed reasoning level 2 jobs, but... Reasoning level 2 is what we're concerned with here. Correct. We're not concerned with reasoning level 3. That's an entirely different question for another day. You're saying that Seventh Circuit is no help to us? I think it's helpful in that it shows that they think that a person with a restriction to simple, routine, repetitive tasks is capable of an even higher reasoning level than we see in this case. And of course, we believe that the same conclusion should be reached here, as these other circuit courts have ruled. This court instructed in Pearson that when ALJs identify apparent conflicts, their job is to simply compare, quote, the express language of the DOT and the regulatory language. When the terms used in this case to describe the type of tasks Ms. Lawrence can perform, simple, routine, and repetitive, are compared with the DOT's express language, there is no conflict. On the contrary, each of them is in harmony with the DOT and regulatory language. Looking first at simple, simple tasks align precisely with the regulatory definition of unskilled work, which describes that work as involving simple duties. There's no dispute that each of the jobs identified in this case, folder, classifier, router, are unskilled jobs. In addition, the limitation to simple tasks aligns with few concrete variables in or from standardized situations, which is part of reasoning level two definition. And in her opening brief, Ms. Lawrence essentially concedes that the word simple is not the problem here when she cites to an Eleventh Circuit case, Vuxta, which found that unskilled work was, by definition, comprised of simple tasks. Turning to routine... That's the issue of first impression for us to discuss or to decide in this circuit. Yes, it is. This circuit has not been faced with this precise question before. We've had different district courts that sort of rule on this. Different. Yes, different district courts have ruled differently. The agency has prevailed in most of its cases before the district courts. The District of South Carolina is a notable exception. They tend to rule differently. They apply the unpublished Henderson decision, in our view, too broadly. It's a distinguishable case from this one here. And again, we talk about that in our briefing. But the majority of district courts in this circuit agree that there's no conflict on these facts. Ms. Cole, you jump right into the merits. So am I to take that this waiver argument that you had made in the opening brief, that you're abandoning that? We're not abandoning that argument. We still think that... That you're waiving it, waiving the waiver? We're not waiving the waiver. We still do believe that the argument presented in the district court was very, very different from the one presented here. There was no hint that the terms were ambiguous. There was nothing of that sort questioning the type of word choice that the ALJ used in his hypothetical question. That was not before the district court. The district court did not rule on that. So we still maintain that that argument was waived. However, we also argue that there is no conflict there. So whether there was a waiver or not, we should still prevail on this case. Isn't the core of our argument the same, though? I don't... And in the bottom line, you told me that we've got district courts here ruling differently on these things, and this is your first impression. There's a lot of incentive for us to address this question, if no more than to add some consistency of the application of law in full circuit. I agree with that. I still, as I said, think... So do you really want us to find a waiver? We would prefer ruling on the merits in this case, I have to be honest. However, you know, we still do think that the argument... We would prefer ruling on the merits. So you're telling me you don't prefer us ruling on a waiver? Correct. Well, you said in this case, at least in this particular case as a vehicle. Sure. Under the facts in the South Carolina cases and the other places, what advice, if any, should we give future ALJs in this situation? Again, I think that the advice from Pearson holds. Their job is to look at the express language of the DOT, look at the vocational experts' testimony, compare those two things, and see if something in that language alerts them to a conflict. And if so, their job is to do what SSR-004P and what Pearson say, ask follow-up questions, resolve that conflict, and make a ruling on that conflict. And should they go ahead and say that in their order, rather than come up here and argue about it? Well, that's what they meant. Uh, I'm sorry. I don't, I'm not sure I understand the question. I think the problem is, is that they may well be doing what you suggest. Sure. But they're not saying that. They just say, okay, there's just no conflict. Why not? And just say that, and you don't have to come up here and waste time trying to say, well, that's what they meant. Right. And I believe they did say in this ALJ decision that they considered whether there was a conflict and found none. Um, to ask them to explain why each term doesn't conflict with the DOT is an additional burden that SSR-004P doesn't require, that Pearson hasn't required. That would be an additional thing in, that would add to the ALJ's duties here. But the burden, there might be some burden at that point in time. But if it gets appealed, there's a burden up here. Sure. And that may be a best practice. But here what's at issue is whether there is a conflict or not. And we still maintain that there is not a conflict. And nothing in this Court's prior decisions would dictate a different result. Pearson, as I already mentioned, is the Court's seminal case on this issue. And as I've already mentioned, it simply requires a comparison between the express language of the DOT and the V.E.'s testimony. And here, there's nothing in the express language of the DOT that would alert an ALJ to a conflict in this case. If this limitation was for simple repetitive, routine repetitive work, as opposed to tasks, would your analysis be different? No, I think it would be precisely the same as it is now. Again, there's simple routine repetitive work, simple routine repetitive tasks. I believe those terms are synonymous. And it would be the same analysis. And I know opposing counsel spoke about the distinction between tasks and instructions. Now, the reason that distinction is important at all in this case is because of what the ALJs have to do, comparing the express language of the DOT to the vocational expert's testimony. And in Thomas, the limitations were to short and simple instructions. Not simple routine, short and simple instructions. And in that case, you could take that short and simple instructions, you can look at the reasoning level two definition, which is for detailed but uninvolved instructions, and you can say, hmm, there seems to be a mismatch here. That would alert the ALJ that perhaps there's a conflict. There's an apparent conflict that they need to inquire about. Here you don't have that same lining up with terminology. You don't have that same thing to alert the ALJ to a conflict. Here you have simple routine repetitive tasks of unskilled work. You have detailed but uninvolved instructions. You have a few concrete variables in or from standardized situations. There's nothing that would alert the ALJ to a conflict in this case. And even setting aside the difference between tasks and instructions, even if that weren't part of it. The Eighth Circuit looked at that issue in the Moore case. And in that case, there was a restriction to simple instructions. They compared that against the detailed but uninvolved instructions of reasoning level two. And they noted that there's an important qualifier there. It's not just detailed, it's detailed but uninvolved. Uninvolved, of course, means not involved. Involved, according to the dictionary definition, the Eighth Circuit found was complicated or intricate. So what we're talking about here is instructions that are detailed but uncomplicated. There's nothing about that that conflicts with simple, just as the Eighth Circuit found. So even if you were to say that tasks and instructions are close enough to be the same thing, close enough that an ALJ should know to look closely at that, these facts do not produce a conflict. And I think it's important to distinguish Thomas, where the restriction was to short and simple instructions, from this case where there's no additional term short involved here. Short may very well conflict with detailed. That's not part of this case. Yeah, because every one of those little modifiers would generate a different type of litigation. Absolutely, and then here, that's what we're struggling with, and that's what we're trying to get back, in this case, to the guiding principles from Pearson, to what the ALJ is tasked with doing here. Opposing counsel says it's not a big deal to ask a couple extra questions, but the big deal is figuring out what those questions are. If there's no conflict they're alerted to, what are they supposed to ask? And just moving on here to harmless error, which the court asked us to address in the supplemental briefing order. It's our opinion that we don't need to get there, but even if there was a conflict here, and therefore an error, that error would be harmless. Harmless error review applies routinely in the context of disability appeals, and there's no reason not to apply the doctrine here. Here, there's no serious question that the result would be the same on remand, even if the court were determined that there was a conflict. It's important to keep in mind in this case that there's no argument here that the residual functional capacity was incorrect or unsupported. That's not at issue in this case. Therefore, there's no dispute that Ms. Lawrence could perform the simple, routine, repetitive tasks of unskilled work. What we're talking about is an alleged conflict between jobs, which the V.E. testified fit that description, and the language of the DOT. In other words, whether Ms. Lawrence can perform these unskilled jobs as opposed to some other unskilled jobs. Well, isn't that a uniquely factual finding that the V.E. has to make? It is, and the V.E. did testify in this case. You know, not only in response to the hypothetical, which described simple, routine, repetitive tasks of unskilled work, but also in further testimony. This vocational expert who had over 20 years of experience independently described these jobs as simple, routine, repetitive, low-stress jobs when she was further testifying in this case. She already affirmed that these jobs do fit that description. And when you look at the jobs themselves, these jobs are folder, classifier, and router. Those jobs are folding laundry, sorting laundry into piles, labeling packages so that they reach their correct destination. These are simple, routine, repetitive jobs. And again, if there was a conflict here, it would be a conflict that is so small that no other circuit court of appeals to address this very issue has been able to discern one. In addition, the record shows that Ms. Lawrence graduated from high school and attended some college. Her work background included a long tenure at MetLife Insurance, where she worked as a technical director, which is a skilled job in which she managed over 200 people, earned a six-figure salary, and met the reasoning demands of reasoning level 5. There's no serious contention here that Ms. Lawrence cannot fold laundry, sort laundry, or label packages. Reasoning level themselves are based on the educational development of the particular person. And Ms. — the record shows that Ms. Lawrence has that education. Alitono, but you don't consider that in a vacuum, right? You consider that in the context of the particular disability that now afflicts the Petitioner. Absolutely. But this is one relevant consideration that vocational experts take into consideration when they're testifying. Generally, the hypothetical questions say something like, you know, can a person with this age, this work experience, and this educational background who is restricted to the following things perform, you know, any work? Are there any jobs you can identify? So that's something the vocational expert did take in mind. And that's something that other circuit courts who have applied harmless error in similar circumstances have considered. For instance, Zernsack in the Third Circuit was a reasoning level three case. And the court said even if there's a conflict, it was harmless. And part of their consideration was the fact that that particular claimant had a work background that suggested that they could perform the type of tasks required from the jobs that issue in that case. But has this circuit ever found such an instance of harmless error where there is found to be error that the ALJ failed to re-identify and resolve a conflict? Have we ever said something like that is harmless or do we send it back? That has not been addressed by this court yet. And I'm not aware that that has been a question that's historically presented to the court. I know it was not contained in the briefing in Pearson. I don't believe it was addressed in Thomas. I don't even think it was addressed in Henderson or Keller. I'm not so sure those are unpublished. I mean, the question of harmless error was addressed. Correct. That was not. It could have been. It could have been. It was not argued as far as I'm aware. It was not squarely presented to the court in those cases. Wouldn't that seem to indicate we don't do that? We don't find harmless error if the ALJ is found to have erred in failing to identify and resolve a conflict. I think that's it. We find it to be fairly simple. Send it back. Resolve the conflict. I think the court simply hasn't ruled on it yet. And it hasn't been presented to the court in the briefing in those cases. Seems pretty straightforward to me. You know, if you got an error, it didn't do something. Identify or resolve a conflict. Simply send it back to it. Right. Do it. Don't just say harmless error because there are some other things we can look at here. We're not in the business of making those kind of findings. Sure, but the very nature of harmless error doctrine is that there's no point in sending something back if you already know what the result is going to be. And we would contend that in this case, we already know what the result is going to be. And in any event, we also contend that the court need not reach the question of harmless error because we do not believe that there is an error in this case. I got that as your main argument. All right. Do you have anything further? Do you have anything further? I don't have anything further unless you have any further questions. Thank you so much for your time. And again, it's our position that there is absolutely no conflict in this case. All right. Mr. Duncan, you have a few minutes in rebuttal. Thank you. She said your Seventh Circuit case is not very applicable here because that's dealing with a level three type reason. It's a high level, so it really doesn't apply. Except that the Seventh Circuit case doesn't say that reasoning level three does not apply to simple routine. It was never raised in the district court and was never raised at hearing, so therefore, they didn't rule on it. They just said we're not going to address that particular issue. What about all those other circuits that have none that seem to go in your favor when you're looking at a conflict here that exists between testimony and level two reasoning? I don't want them going in your direction that I know of. That's right. You found one? Yeah, you're trying to find one now, aren't you? Yes, and I can tell you why, Your Honor, because this court's the only one that got the definition of what is a conflict, an apparent conflict, correct. All the other circuits imply that the claimant is responsible for highlighting the conflict. That level of flattery sometimes can get you somewhere. That might work. This court said that that shifted inappropriately the burden of proof at step five from the commissioner, in this particular case, the ALJ, to the claimant. This is the only circuit that said that that shift is inappropriate. All other circuits have said that the reason that it does not necessarily apply is it was not made clear, and that puts the burden on them. I, in the Seventh Circuit, have to question the vocational expert in depth and talk about conflicts in order to raise the conflict there, and at that point in time, then the ALJ has to necessarily address it. The commissioner's argument, in essence, is telling us that administrative law judges who are doing six, seven hearings a day, two, three days a week, don't know when a conflict exists, that they can't read the DOT and understand exactly what the problems are. They well know. They're well-versed in it. This is what they spend their time doing, and they, unlike federal judges who have to do this based on briefs, they're in it every day, so this is not something novel or new for them. They should be able to see it, and just the simple fact that Judge Diaz quotes the thing and asks me if that's in conflict, the fact that we're arguing about or discussing whether that is or is not a conflict should be enough of a conflict, considering that we're giving deference to the commissioner's own interpretation of the regulations saying all conflicts have to be addressed by the ALJ. That alone should be enough to trigger it, and that's the problem we have in this particular case. Now, as far as the harmless error, it was addressed in Keller, and Keller specifically said that because we're not clear from this record whether she could perform those jobs specifically, we have to remand, and in this case, one of the things I noted is labeler. Hey, yes, it's a simple job, but if you're having hallucinations and you're distracted by them, are you going to have the labeling correct? And if you don't have the labeling correct, is the letter or package going to arrive at the right location? And if you do that enough, you're not going to maintain that employment even if it is simple and routine, and that's the problem we have. So harmless error does not apply in this particular case, and I'd ask the Court to further clarify the Thomas decision that the issue in this is the simple and routine. Now, and I'm not asking for a categorical ruling on this, but as a general rule, simple and routine should trigger that the ALJ asks the simple questions. I do about 20 hearings a month in addition to briefing and circuit court work, and I can tell you that this is not something that would take an inordinate amount of time, but something would help clarify everything for everyone involved, and particularly claimants who many times are, this is their last chance of obtaining anything in the semblance of justice. And on that, I thank you. If there's any questions, I'll answer. Otherwise, thank you for the time. Thank you. All right, we'll come down and agree to cancel and proceed to our last case for today.
judges: James A. Wynn Jr., Albert Diaz, Henry F. Floyd